Please stand by. Just realize that you have to wear these masks. There are 10 minutes for approval and the primary reason for that, Your Honor, is the government's assertion of which date is the appropriate date for the order of approval. Which order of approval is actually going to effective. Alright, we'll hold you to your five minutes. We're going to, excuse me? We'll hold you to your five minutes. You have a number of issues to cover. And I understand it's a unique request. There are two central problems regardless of whatever number of order it is that the government is enforcing. One is notice and service. They did not comply with even the most basic, rudimentary concepts of notice and service that are required under their regulations and required under due process. And the second is, in any of these rules, do we have an effective waiver of Mr. Austin's rights? But Mr. Austin, you're making an unusual request as to the timing. I think your client is making an unusual request here. Having come in fraudulently, taking advantage of the program, having then filed numerous requests for different types of relief, presumably knowing full well that he's deportable and going to be deported, and gotten hearings and rulings. To me, it comes with a little ill grace that your client now is saying, aha, you don't have a copy of the waiver that I got fraudulently by entering the country. And at the same time, not telling us how on earth your client would be entitled to be here in the United States after all this other process. So that's a complex question, but I'm kind of drilling down to, what is this all about? To me, it's about, and I'm not going to argue that there's no waiver. He never signed anything when we came in, but we don't have the document to look at to know how he signed it. Okay, but don't we have a presumption of regularity under Bradley? I mean, we're not in the Second Circuit. We're here where if you, you know, this is what happens. Your client got in. He wouldn't have gotten in unless it's waived. It's your burden to show that somehow he didn't agree to this waiver. To the degree there's a presumption of regularity, it's that the waiver that he signed was in English, which is something when Bradley was decided was not an issue, because Bradley was an English speaker, a native English speaker when he arrived. And Mr. Amorucci is not. And in 2001, we are not involved in the issues for the court in the Seventh Circuit. Why are you? This is a bit of a different factual circumstance. And in terms of my client essentially taking advantage of the program, as you said, yes, he did. He entered in a program that is intended for a different purpose. He used fraud to do so. But the law provides for a waiver of that. And he didn't actually receive a waiver of what? A waiver of fraud. A waiver of fraud? Yeah. I don't think so. He's been denied a lot of relief basically because of the fraud. So there's been no waiver of the fraud. No, no, no. There's a waiver available, is what I'm saying. And he's requested it under the law. But the decision on that waiver. Waiver of what? Yeah. I'm confused. Waiver of what? Under the law, the session that relates to fraud as a ground rule of disability. That means we're not going to let him come in. It's session 2286-C. Oh, so it's like discretionary. Oh. But the agency's already denied saying it's not going to exercise his discretion to say the fraud was okay. I mean, his application for asylum was denied. His adjustment of status, notwithstanding the fact that he's married to U.S. citizens, was denied. His state's been denied. Everything's been denied because of the fraud. It's not been waived. Well, I would assert to you that the 601 decision when you look at it, it's predicated on the adjustment of status denial. The 601 aspect of it doesn't look at his wife's hardships, doesn't look at his wife's situation. He filed adjustment of status too late. He had 90 days to file it. He didn't file it within 90 days. Game, set, and match. And what that occurred, Your Honor, he was operating under essentially the barrier he was representing in the early 2000s. He said, well, why don't we assign him? The asylum's going to be in the way to do anything. He and his wife had already filed the first stages of the marriage case. And they were told, don't do anything. And that lawyer, we don't know what that lawyer received in 2005. If he comes back here, what happens? Are we going to have some hearing? When he had the 2005 decision, he didn't get any communication from us at that time. The lawyer didn't actually tell him that that came. Are you saying he's going to get another adjustment hearing based on ineffectiveness of counsel if he comes back here? I'm saying that, in part, one of the reasons that he remained so long and didn't take the time to do things in the speedy manner that most people would, is that he didn't have a lawyer who told him to do the right thing at the right time. All right, we'll hear from you on rebuttal. That's fine, thank you. This is very strange. Good morning, Your Honors. May it please the court, Pat, who's standing on behalf of the United States government. Your Honors, we would argue that there is nothing at the root of this case. The problem, the major problem in this case, is that the petitioner is clearly deportable. He's applied for asylum. He's been denied. He has a soft judicial review. He has applied for adjustment of status. He's been denied as a matter of discretion. No court can review that. It was denied based on the fraud, the illegal presence, 10 years in the United States, the violation of the Visa Waiver Program. So, as an initial matter, there is simply no prejudice to any of the claims that he asserts. We would also contend, as an initial threshold matter, that there's a real question about the court's jurisdiction. We made a mootness argument. The primary claim that the petitioner has made in his briefs is that there's no order of deportation in the record. And as we supplemented the record, there's clearly now an order of deportation, October 2010, that's been executed, that was executed prior to this court's considering and denying motion for this step. But that's kind of me meeting one gotcha with another gotcha. I don't know that we're going to be willing to condone slapping another order on late in the day. I just alert you to the fact that I'm not appreciative of that. Does the deportation have the effect of keeping him out of the country for 10 years? Yes, it does. So why isn't that all by itself a sufficient collateral consequence for us to say this is not moot? And that's an argument the government did address when they put it in its brief. And essentially, we would argue that because the subsequent removal order is clearly lawfully executed in respect that there's no question he isn't raised in his brief any challenge to removability. So as the child court noted, the panel noted that there's no question that he's an aggravated felony. He doesn't challenge an aggravated felony. But the panel in that case noted that the court may reverse the board with regard to withholding removal and allow him back into the country. There is no analogous circumstance in this case. So he's clear. It doesn't contest his removal. It doesn't contest that he's violated VWP. It doesn't claim any status. He's even arguing in his brief that this is not a VWP case because there wasn't any order of removal and there wasn't any evidence of service. And Bradley, therefore, is irrelevant and he should have gotten a removal order. Let me back up to the beginning again, if my colleagues don't mind. You conceded that the petition is timely, yes? We did, Your Honor. But that was based, you conceded timeliness based on Amoogah's claim discovery of the 2005 removal order on May 27th, 2010, the day he was arrested. But the 30-day limitation for filing a petition for review or final order of removal, it's jurisdictional. That's correct. And the time limits cannot be equitably told. That's correct. And you would have to equitably toll this time limit to come to the conclusion that the petition was timely, filed on May 27th, 2010. Why did you concede timeliness here? We do not propose equitable toll. But then how can you say that it's timely? The question is when does the 30 days run from precisely under the statute? We're not asking the court to equitably toll the time limit. We're saying that the time limit begins to run, as several courts have said, and as this court has said in the Sienkowski case. In an unpublished opinion. Following published decisions of several other circuits, that 30-day time limit under USA 12-2A1 runs from the issuance of the removal or the BIS decision on the alien, the service of the decision. So now we never got service of the 2000. Service or notice of? Yeah, you just said two things. You said upon the issuance of the notice, and then you said service. What is it? Because if it's the latter, if it's service, then your timeliness argument concession makes some sense. If it's just the issuance, then the 30 days runs from back years ago. Yes, sir. I think it's the service. We would agree with those courts that how that, and we would agree with even though it's an unpublished decision, the circuit's decision is Sienkowski. And you're saying you can't prove when it was served upon him? Well, there's no certificate of service on these forms. That's one of the problems here. Is it necessary to even do an order under the VWP regulations, an order of removal? There's actually no regulation. There's no regulation that requires removal. That's right. Where can the timeliness be measured from that? I mean, VWP is a different animal, right? It's not like other things. You come in and you say, let me in, and if employee Bob tells me to get out, I leave, right? That's right. Okay, so if that's the regulatory regime we're operating under, are you inserting a notice provision into VWP, a service provision that gives notice? Well, it is a new procedure. There's no doubt about it. And the facts of this case point this out to me. But why don't we know? There's nothing to serve. In Bradley, the court held it was a footnote. They don't hold in footnotes. And it found that that 1252A1 jurisdictional statute applies in the VWP cases such that there is judicial review within 30 days of the date of the VWP removal or consistent with all the other circuits. That's where we're getting this requirement. Why don't you argue here that surely if the time, if there was a notice or removal order, clearly as of the time that he requested asylum, he had a notice. So we're talking six years before. It's not a closed case. It's not a closed case. He knew he was in overstate. In fact, there was documents that were sent to him indicating that he was in overstate. So there was no formal removal. Are you suggesting then that we move past jurisdiction? Because what I think I hear you saying is this guy loses no matter what. That's correct. Okay. So if he loses no matter what, is it appropriate? Is it all right for us to say there's a jurisdictional question about jurisdiction, it's clear that this fellow has no basis to speculate on. That's correct, Your Honor. In fact, we asked the government to do that in arguing lewdness. But even if the court doesn't accept the lewdness argument, the court can say that there's a real question about whether or not this petition is untimely. But there's no prejudice in this case. There's just nothing at bottom here. At the end of the day, if one is a purist, one would say, well, lewdness is jurisdictional. Timeliness is jurisdictional. And we are supposed to deal with jurisdiction. We can't duck and assume jurisdiction. That's correct, Your Honor. However, again, I think that – Hold on. Because if your answer to her is what I just heard, then your answer to me is something different. And I'm asking it for a reason. I want to know, is the government's position that we may step past jurisdiction and say, assume there were jurisdiction, this fellow loses, case over? Yeah, I would finish my response to you. But we would say that the panel can do that, and that's perfectly appropriate, especially in this case where there's nothing at bottom here. I would also just point the court to the record and say the administrative record at page 26, or actually I think this is the appendix, that the petitioner filed a petition as early as 2002 that the government viewed as deportable as an overstay. He actually, in filling out his application, I think it was one of his applications, a justice application, he noted as an overstay. Also, on page 7 of the appendix, the I-94-W-4 stated violation of these terms will subject you to deportation. There's clearly been notice. But he says he couldn't read them because he didn't speak English. Well, that's at some point along the way, though. I mean, he understood that he was coming into the country without a visa. Now, he understood that something was going on. He was gaining the benefit to get into the country. And now, without signing the waiver, he's saying I didn't sign the waiver, that he is able to stay in the country. Because he's saying, I don't think I read the papers. I read them very closely. To say he didn't sign, he does not say deny signing. His argument really is that they were in English and he did not speak English. He didn't understand them. In fact, I think that our Board of Counsel actually suggested that in his opening remarks. But I think he's really saying you need to produce that. And if he's saying you need to produce that, he's not really saying I didn't understand it. Because if they produce it, they say, okay, you produced it, but guess what? I didn't understand it. But half of it, two pages of it, are in the appendix, the front and the back of the I-94. That's right. And I think, again, that the Bradley decision governs this case very clearly. So we would just submit that the specific points, the holdings of Bradley, govern all the issues with regard to the waiver. And so that's not an issue in this case. And there's no claim that the position has any legal status or any possibility of legal status, apart from the suggestion about adjustment of status, which has already been denied as a matter of discretion and therefore is not reviewable in court. Does the October 14, 2010 order make the 05 order a nullity? What's the legal effect of you issuing that second order? I don't want to speculate. It's unclear. But I think perhaps what happened here is that the government acknowledges in this brief that the 2005 order is either lost or misplaced. What may have happened here is that when the petitioner's adjustment application was denied, that same day he was taken into custody, DHS got its act together and realized what was going on. Then perhaps they looked at the file, didn't find the order, and simply said, just to make sure, to cut ourselves. It's chicken soup. It doesn't hurt. Does it have a legal effect on the earlier thing? I guess this is going to the jurisdictional question again. Do we not have to worry about jurisdiction relating to the 05 one because when DHS issues the 2010 one, it makes the earlier one a nullity? Or is that not so? He didn't file a petition for review of the 2010 one. He said he didn't receive the 2010 one either. He signed the verification of the renewal form on the date that he was removed, and I think he was still waiting for the petition for review time at that time. This removal doesn't preclude him from filing a petition for review. It's too late to do it now, though. That's correct. So even if that's true, I will say that the particular office that served this has a regular practice of serving both the notice of intent and the order of deportation on their own. To answer your judge's question, again, I think the government's position here is that the petition for review did file. It's time that the court doesn't need to reach that question, and the court can simply dismiss this case for lack of any merit on his claims and their prejudice. In fact, it would be a futility. I mean, the futility doctrine is another doctrine that applies here. If the court were to grant a relief request, it would be essentially remanding for the pointless notion of issuing another removal order again to remove the petition from the United States. Meanwhile, he's been removed. So the fact that the court can simply, not particularly a jurisdictional question, is to accept the government's move to start a new position, which is another jurisdictional way that the court can dismiss this case. And we would think that this case is distinguishable from a child case on that question and that there are no collateral consequences that would occur. So if we accepted the petitioner's argument and let him back into the country by vacating the August 2005 order, would that give him some relief? In other words, would you remove this argument? If we said the 2005 argument should be vacated, would he be entitled to reenter or not? I don't see how he can't if he was not entitled to enter in the first place. And if he has shown that he is not establishing any harm, he's not claiming the status, he's not claiming eligibility for relief, I guess he's claiming eligibility for adjustment, that is unreviewable. So I just, I don't see how, that's where everyone's argument comes in here, that the issuance of the 2010 order and its execution would mean nothing left in this case. One final point, if the court were to disagree with the government and find that there was a new man that was married or some kind of relief, we still don't think that the proper remedy would be to bring the petitioner back into the country. But even under those circumstances, there's some violation that he could somehow be eligible to have some status in the country, but that could be adjudicated with him from abroad. But if there are no other questions, I'll leave it at that. Thank you. Thank you. Thank you again for the extended period of time for rebuttal. I think the central issues here are two things. One is the issue of discretion, which I'm going to put a little bit to the back end. The other is, is there a knowing and intelligent waiver? Because everything the government is doing here relies on the concept that it's regular, it's in procedural regularity, issuing an I-94W, having it signed, having that language in 2001. It would be only done in English, I'm sorry. But didn't he enter under the waiver? I mean, he took advantage of a program that required a waiver, and had he not waived, he would have been not admitted. He took advantage of it, and now he's saying, what's he saying now? We need to prove, I got here pursuant to waiver, I took advantage of it, I defrauded the country by doing it, but I took advantage of it, thank you, I'm here. Now, gotcha, you prove that I waived? No, that he should have the right to prove whether or not the waiver that the government is asserting, which would mean automatically removing the question there, under the 217 program, which is what they want to do, that he has the right to say, that shouldn't be what applies to me because I didn't know what I was waiving, I didn't know the waive, I didn't know the provisions. Let me give you an example. Before you do that, this is where reserving ten minutes for rebuttal is a little problematic, because if it's really rebuttal that you're up here to do, there are three things that the government's argument covered. It covered lack of prejudice, it covered lewdness, and it covered jurisdiction on the timeliness of the issue. So those are the things that I think you've got to respond to with your ten minutes, and I'm interested to know what your response is to the lewdness question. They say there's nothing that can be done for your client. So what's your response? The lewdness issue is that October 14th or October 8th, the new leader was never, ever properly served. There's a regulation that requires service on counsel to the government, and when you're not representing them with that individual, decide what comes. Mr. Holmstein doesn't need to know about the fact that we're rebuking him. Are you talking about 8 CFR 2925A? That has nothing to do with this? It requires the service of any adverse decision on counsel, and the government knows that some of those representatives, they're supposed to serve you. It has nothing to do with the VFP case, does it? The government says it doesn't. The arguments I'm making with respect to the intelligence issue go to both the validity of any removal order, whether it's October 2009, 2005. If there's a no valid removal order, we can't hear your case at all, Cameron. Correct, but the remedy would be then to place him back in. You have to say the no valid removal order. The removal that was executed needs to be un-executed. We couldn't say anything. I mean, help me out. If there's no valid removal order for that, if there's no final order, then under 1252, we can't say anything. Just dismiss the appeal. Yeah, we dismiss your appeal and you're done, aren't you? If you only have jurisdiction over a final order, so I'm not sure how you can have it both ways, how you can say there's no final order and that order will be for my client. If you at least did that, it would give us grounds to argue that the removal in the first instance was unlawful and we would file it was in federal court. But there's no removal. There's no final removal. No, but the government executed the forcible removal. But I think they have legal authority to do so. If you say the removal is for us to review, then there's no legal authority for that action. Why don't you go back to Moot and send Mr. Hallstein? Because he's gone. He's out of the country. How do they make it a habeas case for somebody who's not in custody? That's what I'm saying. If there's no lawful removal, how is he removed? How do we review what we found out would be an unlawful action? He was removed pursuant to the 2010 order. Even if we find that his challenge to the 2005 order has merit, it could not affect the 2010 order, which he's not appealed and it's too late to do so now. The 2010 order is the order that necessarily vacated the 2005 order. Two issues for that. The 2010 order relies equally as much on whether there was a known intelligence breaker. He never had a chance to even prove did he know what he was signing and did he know what he was getting into when he came in under the program and came out under it. That's the first thing. The second thing is the 2010 order was never given to me. My claim that he was being deported wasn't under the impression that this was a brand new process. It was under the impression that this was a new process that he'd only been in detention for from May of 2010 all the way up until October. He's content in May. May 2007, he first learned of the August 2005 order of deportation. He knew there was a deportation. He filed a petition for review and a motion for stay removal. Stay removal was denied. I just don't know where we're going. Let's get back to prejudice. What would he do if we said, oh, absolutely, we're really sorry. No deportation order. If you acknowledge that there's an unlawful government action, how could there be a habeas to deny custody? Well, then, if the court can't order return, then I do know that there have been occasions, and it's very difficult, and this would be the first time I've ever had to deal with it, but I know that there have been times when I filed a habeas action. I would essentially argue in habeas that our initial petition for review filing, because it was done while he was in the room, I was still told the habeas requirement, because I have had that kind of a situation where I filed one federal court action for a client he's removed and deported, but then habeas lies because the first court action was done,  why would we order his return when he had no right to be here in the first place? That's my first question. He at least had a right to do what someone in a very similar situation was doing. He had a right to enter legally from Algeria, assuming that it was part of his program, which it wasn't. He had no right to enter this country fraudulently. I'm not saying he had that right. This is the right I'm saying he had, and I want to analogize to a very similar situation to have had any number of clients do this. Someone gets a completely fraudulent visa, comes in under the regular provisions, and does exactly the same thing. That person gets a hearing before an immigration judge to determine exactly the same behaviors as he has for a high sentinel. The analogy is this. That person and any number of clients that I've had in those scenarios, they don't know exactly what way a smuggler is going to get them in, what they're signing, what they do. They kind of do this, but a lot of times they simply don't know. Yeah, not really right. The upshot of the argument is he knew he was coming in illegally. He knew he was defrauding the United States, and when he got caught and thrown out, now he has better rights than a person who lawfully came in under the VWP program because under the VWP program it's undeniable that they could send you out if they wanted to with no reason after the 90 days. So your assertion is the defrauding party is in a better legal position than the honest person who comes in under the VWP. That's assuming that the honest person also understood their rights. Well, you didn't understand his rights. He came in under this program. How does he come in under the program fraudulently and get a French passport instead of an Algerian passport that would qualify him? No, but my point is the clients that I have will do exactly the same thing, but instead of getting a fraudulent French passport, they get a fraudulent Indian passport and then go and get a fraudulent visa. So they're not coming in under the VWP, right? No, but they're operating under the exact same concept. The thought processes are the same. They know what they're doing is wrong, but they also don't make the... I know Ms. Johnwood, which she didn't understand, and what we don't know if we ever understood was did she know that the way that she was coming in and get an automatic ticket with no review, none of the due process... I don't think the law requires that the person have read and understood all of the terms and conditions. I assume that if they come in and know enough to get a French passport to qualify that they've... I disagree in the sense of it. In the case that I would cite you to, I'm just going to really read closely from Compassion Bradley, and that's the Bobbitt case from the Seventh Circuit. So there's an acknowledgement there that someone who came in this way, almost exactly the same way, should have had the opportunity to challenge in some form, whether it's in front of lawyers, in front of an immigration judge, in some form what were the real circumstances when I signed that document, or when I came in with that visa waiver program. Did I know what I was doing to the degree that it meant that I was going to get out of the process? Because that's what happens here. The government is engaged in a process to initiate a bunch of different orders... Well, we had much of a process. Let me ask you one simple question. When you start on this case, being told it's a VWP case, you now tell us in your brief at page 9 that it's not a VWP case, that because there's no valid removal order, no evidence of service in the 2000, no evidence of executing a waiver form, that it would make him subject to the VWP. This is not a VWP case, and he should have gotten a judicial removal order. Is it your position before the House that this is a VWP case, or it is not a VWP case? That it is not. I acknowledge that it is not a VWP case. The VWP is applied where there's a known and intelligent waiver under the program. And what I'm saying is that there's no more showing that he known and intelligently waived his rights to further challenge the program. And you say that's the government's burden? It's at least a burden to provide some initiative, and that's what my point was, is that there's no I-94, that he fell to the man with no... But even if he had an I-94, the fact that he didn't know what he was signing is not something the government has to prove that he did know what he signed. Do they? But he didn't even get the opportunity to say, to present any kind of evidence. We didn't know there were procedures here. I mean, we didn't even know that they were giving the orders. So how do we have a procedure to even say, hey, wait a minute, I think what we're doing is sit down with an officer, sit down with a judge, and say, look, this is what happened. Thank you. And I understand. Thank you for all... Thank you. Thank you. We'll take the case under advisement.